are familiar with the rules which involve the timing, so watch yourself when it gets to be red, realize you've got limited time, and please stop when it's done. Well, actually when it gets to yellow it has limited time, red you have no time. Okay, with that we will get started, and it's my understanding there was a little change in this original, this first one between some folks, so I will call that. So we will start with case number 22-30139, SB v. Jefferson Parish School Board, and we'll begin with Ms. Stepanova. Good morning, Your Honors. May it please the Court. My name is Marina Stepanova, and I represent AMICI. AMICI support appellant and respectfully ask that this Court reverse the District Court's decision. I will take the first few minutes to focus on the important jurisdictional question that underlies this case, and that could be dispositive. In addition to the District Court's errors that appellant will present, the District Court also erred because it treated the IDEA's exhaustion requirement as jurisdictional, but it is not. Instead, it is a claims processing rule. I will focus on three key reasons that directly show this. First, the Supreme Court's bright-line test for determining whether a statutory provision is jurisdictional. Second, the text of the IDEA viewed in light of this bright-line rule. Counsel, could you keep your voice up, please? Yes, Your Honor. And third, the precedent from this Court and other circuits. First, the Supreme Court in Arboro v. Y&H Court held that if a statute does not, quote, clearly state that a certain provision is jurisdictional, then courts should treat it as non-jurisdictional. There is therefore a presumption that a provision is non-jurisdictional. I guess I'm just a little wondering why an amici, an amicus person, is interested in the exhaustion issue as opposed to sort of the core of this case. Yes, Your Honor. Amici are interested in this issue because there is quite a bit of confusion among the District Courts as to whether the IDEA's exhaustion requirement is jurisdictional. And treating it as jurisdictional would have dire consequences for litigants because it would result in the waste of judicial resources and for litigants not being able to determine whether this is a jurisdictional question or a claims processing rule. And in this case, it is a claims processing rule, and it is not jurisdictional. Applying the Supreme Court's bright-line test, as stated in Arboro, to the text of the IDEA shows that it is not jurisdictional. The exhaustion requirement at issue here is in Section 20, in 20 U.S.C., Section 1415. What purpose does it serve? If it's not jurisdictional, what purpose does it serve? It is an exhaustion requirement. It does not mean that it is not mandatory. It is definitely mandatory. But it is a claims processing rule, and it is intended to allow litigants to follow a procedure. But if we were to conclude that this particular one was not there until the second amended complaint, which the district court did not allow, then how can we say they didn't assert the defense? Because you don't have to answer a complaint until it's filed, right? What am I missing on that? Yes, Your Honor. I will let Mr. Edmonds discuss waiver in greater detail, but the issue here, the key issue is that the district court raised it sua sponte. And so here, the defendants did not raise the defense. The only defendant that raised the defense was Raul, who did not even have standing to assert it, and she raised it in a sur reply. But despite all of this, the district court said they will consider sua sponte whether exhaustion was satisfied. And so that is why this is an issue here, and that is why it is important for this court to address, because this was a key central ruling from the district court. And it reflects the confusion in this district court, but also in the lower district court, but also among others. Is there any other part of this case you want to address, because you only have a minute 30? Yes, Your Honor. Only the jurisdictional question, and I would just like to point out that holding that the IDA's exhaustion requirement is not jurisdictional is in line with this circuit and with other circuits. This court has not yet decided whether exhaustion is jurisdictional, but it has decided that Title VII's exhaustion requirement is not jurisdictional, and that was in Davis v. Ford Bend County, which this court decided in 2018, in which the Supreme Court unanimously affirmed, and a very similar analysis applies here. The case Gardner, which this court decided in 1992, does not change this. It explicitly stated that it was not deciding whether exhaustion is a jurisdictional requirement, but it did say, quote, quite arguably, it is not, because there is a judicial exception to exhaustion when exhaustion would be futile or inadequate. And therefore, only after conducting its entire analysis did the Gardner court add in dicta that this made the case not justiciable, and the district court here erred because it relied on this dicta, and it made a second error because it treated this as a discussion of jurisdiction, which the Fifth Circuit stated that it was not. And holding that the exhaustion requirement is not jurisdictional would be in line with the key most recent rulings from other circuits, such as the Ninth, Tenth, Eleventh, and most recently, the Fourth Circuit. I see that my allocated time is out, and I will now yield to Mr. Edmonds. Thank you, Your Honors. Thank you. All right. Mr. Edmonds? Good morning, Your Honors. May it please the Court. Chris Edmonds on behalf of Appellant S.B. If it's okay, I'd like to start with an issue that Judge Haynes just raised, why would the appellees need to raise exhaustion before the proposed second amended complaint. Under Rule 12H, you have to file any affirmative defense that is available to you, you have to assert it at the first available opportunity. This also comes from the Cruson case, which is in our brief, and there's a good reason for that, because otherwise, parties would have an incentive to sort of lie in wait and raise affirmative defenses, or maybe depositions aren't going their way, and so, oh, exhaustion. Here, exhaustion as to the ADA claims and from the original complaint. It was also available when we filed the first amended complaint. They did not raise it. Even when we moved to amend, they still did not raise it in their response and opposition. It wasn't until the SIR reply that it was raised, and it was raised by Janine Rowell, who was a special education teacher, and does not have standing to raise it, because we cannot sue Janine Rowell in a special education proceeding in state administrative proceedings. She cannot be sued under the IDEA. There is no relief available against her under the IDEA. So, therefore, she does not have standing to raise it under this court's Chiland decision. Exhaustion is a defense that belongs to a certain party, and it belongs to the Jefferson Parish School Board. The Jefferson Parish School Board did not raise that issue. If there's no questions about that, I'd like to move on to the disparate. I'm kind of wondering why was this not a suit against Nick and Rowell in Louisiana State Court? Well, certainly, you know, there's two parts to the question. Are you asking why it was not a suit against them and not the JPSB, or are you just specifically asking about venue? I'm asking why this wasn't a straightforward lawsuit against the people that did the slapping. Well, sure. In state court. Yes. Fair question, Your Honor. Certainly, it could have been, but as the plaintiffs, we are the masters of our complaint, and we believe this isn't just a simple issue of a battery. We believe this is an issue of disability discrimination. And, in fact, Louisiana has now banned, it's such a problem that Louisiana has, in fact, banned corporal punishment against children with disabilities because they are disproportionately administered corporal punishment. And in my client's case, she was slapped because she was exhibiting signs of her disability. And this is a, so, yeah, we, I understand your question. Of course, we have attached state law tort claims to our federal complaint, but I don't know that that's really an issue here on appeal. I believe we have viable disability discrimination claims, which I would like to get to, if that's okay. Well, I mean, your opponent does not think you have viable federal claims, so I do kind of think that's an issue, but I'm sure you prefer it not to be. No, no, fair enough. I guess I meant the venue question. But, yes, no, so, on disparate treatment, the issue is that the district court employed a summary judgment standard at the motion to dismiss stage, right? It said you have to identify by name, no less, other students without disabilities or different disabilities who were treated more favorably than your client. That is a, under this court's Chico Lacey case that's cited in the briefs, which comes from the Schwierkiewicz case from the Supreme Court. That's a, that's like the McDonnell Douglas standard. That's a summary judgment standard. And we haven't had the benefit of any discovery. We're not held to that standard. We only, we're held to Iqbal and Twombly. We merely, we have to show that the complaint is plausible. And, of course, it's plausible because if it's not plausible that my client was hit or treated differently than other students, then let's think through what that would mean. It would mean that either A, these teachers are hitting all students who act out in disruptive ways, which would be quite shocking, or B, it means that no other students have ever acted out in similarly disruptive ways. So what we have to plead at the most, excuse me, at the pleading stage is the ultimate elements of disparate treatment and equal protection. And that comes from the Chico Lacey case. And so the district court said you have to identify these other students by name. How can we do that? My client is a nonverbal 11-year-old girl. It's not clear to me how, putting aside the serious privacy concerns of naming other children in a public document, it's not clear how we could even do that. And that comes from the Johnson v. Johnson case, which is an equal protection case involving a gay prisoner who claimed that he was treated less favorably because he was gay. And the district court said, well, you've got to identify other prisoners who were treated more favorably. And this court said, no, no, no. How is he supposed to identify other, how is he supposed to have that kind of information? And the same applies in my case. I don't know, no one has ever explained how my client could have that information. That's what discovery is for. What information are you saying your client couldn't have? The names. They asked, the district court said it's too conclusory to simply allege that my client was treated less favorably than other students without disabilities or with different disabilities. She said you have to identify similarly situated students by name. And it's not possible for us. That's a summary judgment standard. Well, I don't, I guess I don't understand why it wouldn't be possible. Well, my client is... If you're in a classroom with other people... She's a nonverbal 11-year-old girl. She's not able to speak, Your Honor. That's the... I understand all of that. There were other people in the classroom who could be asked. Correct. And that's what discovery is for. All right. So, yeah, we could, yeah, absolutely, if by... If you don't know that it happened. Your Honor, you don't have to know something happened to file a lawsuit. You can suspect that something happened. You have to know something happened to plead it. You can't lie in a pleading. No one's lying. Okay, then, if you know it happened, then you know it happened. Why can't you describe it more than just to say, ah, they treat other people differently? If you don't know that, how could you say that? That's what I think the district court was concerned about, not so much the name as just the reality. It's easy enough to say, oh, I think everybody walking in this courtroom is making nasty comments about me. But if I've never heard that, nobody's ever told me that, then how can I say that? Well, Your Honor, let's change the context a little bit. If this were a Title VII lawsuit and I'm an employee and I believe that I'm being discriminated against because of my race, right? I may not know that. I may not have proof, but I strongly suspect it. I have the right to come into federal court and file a Title VII lawsuit. And I will need, to keep that lawsuit going, I will need evidence, right? And so long as the allegation is plausible, I mean, that is— A lot of those get dismissed. Well, they get dismissed at summary judgment because they can't— Some of them get dismissed at 12 v. 6, some at summary judgment. Some of them do, Your Honor. But what we're saying is that this—you have to have a legal basis to dismiss the suit. And the fact that she wasn't able, under this court's—I'm going to read from Chicalese. So it says, A district court errs by requiring a showing of each prong of the prima facie case for disparate treatment at the pleading stage. We have also explained plaintiffs do not have to submit evidence of a prima facie case of discrimination at this stage. They must only plead sufficient facts on all the elements of the disparate treatment claim. Sufficient facts. Yes, we have—yes, a fact— I'm thinking that I'm asking you difficult questions because you're from Louisiana. I don't see why that is something you could rely on. Because I ask difficult questions of everyone, you'll be happy to know. Yes. Wherever they're from. Sure. I'm not sure—I'm not sure I follow the question, Your Honor. If we pleaded that our— Well, any time someone is treated poorly, they could think it is for some reason that has nothing to do with their conduct or their behavior or something like that. And so if that's enough to sue, then pretty much everyone who's capable of being discriminated against could sue just because they're treated rudely or they're treated difficultly at work when maybe the person treats everyone difficultly at work or asks difficult questions of everyone or whatever. Candidly, Your Honor, these are questions that would be better suited to Congress because it is true that anybody has the right to sue a lawsuit, and if you don't have evidence ultimately to prove it, it will get dismissed on summary judgment. But at this stage, all we have to do is plead. And we believe—not only are we pleading, but not only have we pleaded the alternate elements, but as I have said— But isn't that really what Iqbal was about? Iqbal— To not let you just come in and say, well— Yeah, you can't—it just has to be plausible. You can't come in and say something that's totally implausible. But it's totally plausible that these teachers are treating children with disabilities less favorably than other students. And, in fact, we have other facts in the case. We have facts that she was yelling at my client and being totally impatient with my client. And so it's totally plausible to believe that she was not hitting other students that didn't act out in the ways that my client did. Or, excuse me, hitting other students that did act out but had a different disability or did not have a disability. So I'm running out of time, so I'd like to briefly address the substantive due process issue. Obviously, we concede that the body of the case law is not in our favor with regard to the substantive due process claim. So we are preserving this issue for en banc review because we believe that this Court's fee be hearned on case and that line of cases is directly at odds with Zinnerman v. Birch from the Supreme Court and directly at odds with all the other circuit courts of appeal. That said, we do believe that fee is distinguishable because it involved a narrow context of cases that authorize corporal punishment against students. And in this case, Louisiana expressly prohibits corporal punishment against students with disabilities. If there are no further questions, I'll reserve the balance of my time. Okay, thank you. You've saved time for a vote. All right, and now we'll turn to the appellees, beginning with Mr. Tubbs. Okay, I don't know if I'm pronouncing it right. For Jefferson Parish. I'm not going to bore you with a lot of details because the things I was going to argue to this Court this morning, Judge Haynes asked all the questions that I would suggest had to be answered concerning this matter. Well, but now you need to address what they've said. So they talked about the exhaustion issue and they talked about the lack of need to plead anything beyond a conclusory statement. Yeah, well, look, I set it out in my brief in detail. I think everybody set out. There has to be more. The facts have to be specific. There has to be substance to the facts that you plead rather than mere form, rather than mere alleging things that you think might fit the definition of a plausible claim for relief. There's got to be some specific facts that point that out. Well, let's talk about the fact that these days discrimination sadly still exists. Improper discrimination still sadly exists, but maybe isn't as, you know, loud or in the words. They don't use the words maybe that they did a few decades ago. I'm sure they still do sometimes. And maybe so it's a tad more subtle but still has the same impact. You have a harder job. You're less likely to be hired. You know, all of those things. But they don't come out and say it's because you're X. But that doesn't mean that there's not discrimination. So what is it that, you know, somebody who's being discriminated against, what do they need to say? Well, it's almost like the judge said in her decision, in the many decisions, it's not necessarily always what you say, but it is the manner in which you say it. And that is that you can make all of these conclusory allegations and say all of these things exist, but you have to have some specific instances to back that up, to demonstrate that you've got a plausible claim. It kind of sounds like they don't. Pardon me? It kind of sounds like they don't. Well, I don't think they do have any facts. I don't think they have alleged any specific facts to back up the conclusory allegations that they're making. And so what happens if you really think you're being discriminated against, but you need some discovery to show that others are being treated differently who are not the same whatever, the same category you're in? Well, I think in this particular case, Your Honor, they've pleaded all the facts that they have. The plaintiff has pleaded all the facts that they have. As a matter of fact, we started out in this case with an initial original complaint. When we filed 12b-6 motions, when I filed mine, when the other defendants filed theirs, the plaintiff saw fit to dismiss that of right and file a new one. In essence, the new first amended complaint really changed nothing other than to remove his IDEA claim from the mix. And so the court addressed all of that, I believe, in its decisions, Your Honor, when it said essentially under Twombly, if I'm pronouncing that correctly, and Iqbal, that there has to be some substance to the fact that there is none here, judges. There's nothing here. All they can allege and have alleged is a slap on the wrist by two Jefferson Parish employees, one a special needs paraeducator and the other a special education teacher. I think you hit the nail on the head again when you asked the question, why was this suit not brought as a tort claim in state court? It could have easily been done, and I would suggest to the court and have in my pleadings, in my briefs and in my pleadings in this matter, that this is indeed a case that should have been brought in Louisiana State Court for tort. So why aren't you all liable for your teacher's conduct? We might very well be, but that's why we got lawyers for the teacher and for the special needs para, because there's an inherent conflict in there as to people committing actions outside the scope of their employment. So, yes, we could be responsible for their negligent acts, but we certainly would not be responsible for their intentional acts if they acted outside of the scope of their employment. So not in some manner, as plaintiff would allege in this case, that we're trying to delay things, that we got attorneys for Ms. Nix and Ms. Rowell. We got attorneys because there is, on its face, a conflict of interest that required that, and that took some time. Another thing that your court has pointed out this morning, quite succinctly, is that issue in this case has not yet been joined, Your Honor. We've been at this for a long, long time. We've filed multiple pleadings in this matter. The case was in a position where, at first, he dismissed it on his own. Then it was dismissed. Then he filed a motion to re-urge it. And in all of those situations, as we move along that line, plaintiff adds what he thinks are sufficient facts to state a plausible claim for relief. Every court that has looked at this so far says he has not alleged sufficient facts to allege a plausible claim for relief, which makes it gist, grist, whatever you want to call it, for this court and the other courts to say, we're going to stop you short and not going to make the plaintiff's file an answer even. You know, how can we raise the exhaustion issue when issue hasn't even been joined? Okay, so I want to ask you about the exhaustion. Why haven't you all raised that? That's their argument. They said you didn't raise it when they moved for the Second Amendment complaint. Only Raul did in a surreply or something like that. Well, I would say I would borrow from Mr. Kleinman and say, because at that point it's still all premature, Judge. If it's an affirmative defense, we haven't even filed an answer. We've entered no affirmative pleadings at all. But then how can the judge raise it if the person who has to raise it hasn't? The judge determined that it was going to be raised sua sponte, and I think that the cases bear that out. But I would also say this, that on that particular issue, well, you know, the issue of exhaustion, it was in the case, then it was out the case, then it was raised by the court. I think the issue is that at this point in time, it's still really, even if it's in the case, it only applies to that one narrow issue that was raised concerning this failure to accommodate now, this new claim under this Phillips v. Prater case, which, of course, this court rendered, but I suggest that it's an outlying case. It's got nothing to do with the facts in this case. It involved egregious corporal punishment. It was corporal punishment by a school resource officer as opposed to a member of that school or a member of the Jefferson Parish School Board. We're dealing in this case with a teacher and a paraprofessional. And if they committed a battery on this child, let a state court decide that, Judge. Plaintiff has just fashioned his pleadings as he has gone along to fit what he understands would be the reason why he should be in this court. I don't know why he's, I can only guess why he wants to be in this court. I don't know why. I don't know what his motivation was. But when I saw this and when I saw the non-egregious nature of it, oh, let me add, too, plaintiff places great weight in the fact that the Jefferson Parish School Board has admitted that these people, if they did, should not have slapped this child. Well, of course they should not have slapped this child. Then why did you just move them instead of fire them? Judge, that's in the pleadings. That's in the pleadings. Do you want me to give you real facts? We're not dealing with real facts. You're asking me why we didn't move them because of, do you really want to know? Do you want me to go outside of the record? No, I don't want to go outside the record. But, I mean, their argument, let me ask it a little differently. They said you didn't properly address their conduct by moving them rather than firing them. So how do you address that point? Well, I would suggest to you, all I can say without going into the facts, that the investigation of these matters didn't warrant any other action. One of them quit, and the other one was moved. And I might add, we've got two instances here, and these are facts in the case. We've got two instances here. The first instance happens, I think, on February 7th of 2021. It's reported by somebody who doesn't work for the Jefferson Parish School Board. It's one of these outside people assigned to deal with, I'm running out of time here, to deal with these autistic children. We didn't find out about it until February 10th, which was the following Monday. The incident in November that happened right then and there,  was that teacher fired? No. Okay. She wasn't. So, I mean, are you just, is your point really that as far as SB is concerned, SB is not going to be subject to anything from these people again because they've been moved? And is that the point? Whether that's a good way of handling it or not, it handled it as to SB. No, ma'am, I'm not suggesting that at all. You're not? Well, no, what I'm saying is if there was more, if the facts show that there was more seriousness to this, meaning that they intentionally discriminated against this child, then maybe something more should have been done. But based upon the facts as have been alleged, I suggest that we get all that's necessary. I'm not talking about the, you know, addressing SB's discrimination. I'm talking about that SB isn't going to be subject to being slapped by this teacher or person again because they're gone. That was my point. Right. Is that what you're saying? Yeah. Okay. Okay. But I don't want to go out the facts, Judge. I'm sorry. I just have a question about the claims and the possibility of bringing those claims in state court. I mean, I think we all agree that they could bring claims in state court. Is there any support for the proposition that they should bring the claims in state court? From my client's end, yes. This was not a case of intentional discrimination or discrimination against this autistic child because the child is autistic. The facts show that it was a simple battery. The facts. I'm not admitting anything. The facts as pleaded show that it was a simple battery. If it was a simple battery with no intentional discrimination element at all, then it does not belong in this court. That makes it a simple state court tort claim, and that's where it should have been filed. That's where plaintiff's remedy lies, not here in this federal court. Okay. Anything? Okay. Thank you all. We'll turn to our other defendants, beginning with Mr. Kleinman. 4F, Nick. Good morning, Your Honors. Randall Kleinman, representing Leslie Nick. May it please the Court, I'd like to go over the operative facts as related to Ms. Nick, as part of my initial presentation to you. She is alleged to have slapped the child on top of the head while she was pinching, while the child was pinching her neck. Those are the operative facts. There are no suggestions anywhere that she had done anything, screaming and yelling at the child, any other previous actions. Nothing except a sole incident. I'd like to, in light of these facts, suggest that you Let me ask, what do you understand the ultimate relief is that the plaintiffs seek in this case? That's a good question, Your Honor. He is sued for injunctive relief. He is sued for damages. He is sued for punitive damages. And he is, as well, sued for attorneys. But is it ever focused on what specific relief he seeks to remedy the situation that he claims is He also wants a reasonable accommodation as well. Does he define reasonable accommodation? I think so. It was based upon a decision, a recent decision by this court, the Praetor decision, in which it was held at a reasonable accommodation. It's an unpublished decision, by the way, in which the court held that a policeman who was not an employee of the school system could have been a little more calm. And I think in dealing with a child who was acting up. And so the reasonable accommodation, I suppose, is to train people to be more calm, to be cool, which is something they do anyway. So I am a little bit in the dark as far as what the exact remedy is. I do know they want damages and attorneys and punitive damages and all kinds of things. Everybody wants those while they're in this courtroom. Exactly. Which brings me to the substantive due process issue, which is I just wanted to ask something on when you were kind of illustrating what happened. Are you just saying she was basically defending herself with the slap when she was being pinched? That actually is my defense at trial. I know I have to accept the fact that she has pled for purposes here. But I think that under Iqbal and Twombly, the district court is charged with using her common sense. And I think that comes straight from either Iqbal or Twombly in the pleading of the cases that require the district court to apply her common sense. Why would anybody slap a kid who was pinching her neck? Well, because it would get your head off my neck. It's that simple, really. So you're saying you don't think that by itself proves discrimination? No, ma'am, absolutely not. So explain what your reaction is to this notion that they pled enough to show discrimination because other kids were pinching her and she wasn't slapping their hand. I don't read that in the pleadings at all. In fact, it brings me to one of the main points in my appeal, which is my client is not sued in any official capacity. She is sued as an individual in her individual capacity. And the courts require, and that's a rule of pleading, that if you're going to sue somebody in a civil rights context in their individual capacity, you have to prove with particularity and specifically what your claims are. You're supposed to. I mean, I think there's a case, a very recent case from this circuit, saying exactly that. And you made a very good point when you said, well, how does a plaintiff get to do this absent discovery? Well, there are a number of ways of doing it. We're talking about public entities. They're subject to investigation. They're subject to the Louisiana version of the Freedom of Information Act. You can ask questions. You can meet with other people. You can ask for the personnel files from the teachers. You can do any number of things to investigate whether a teacher has been disciplined previously. Well, did the district court here in any way cut off discovery in its entirety by ruling as quickly as it did? Well, we haven't answered. We never got a scheduling order. I don't believe we had a scheduling order. I may be wrong on that. And, no, there was no discovery at all. We went straight to motion practice. Okay. All right. Well, your time is up. Thank you, Your Honor. I appreciate your time. I assume that they, in opposing the motion to dismiss, that they urged discovery at that point. I don't recall that that was the case. I may be wrong, but I don't believe that's correct, Your Honor. Okay. Thank you. Thank you so much. All right. So, Mr. Pacey? Pacey, like it has to be. Okay. Or Ms. Rauh. May it please the Court. My name is Rene Pacey, and I represent Jimmy and Rauh in connection with this litigation. I think the Court has been well briefed on the facts and issues, and I know there are questions regarding the Jefferson Parish School Board and discrimination claims. I'm here to address individual claims associated with Ms. Rauh. As pointed out by counsel for Leslie Nick, we've been sued individual, and those individual claims rest in state court, not in a federal discrimination case. Those are issues that should be addressed in the Jefferson Parish School Board. So then why did she raise the exhaustion point? The exhaustion issue was raised, Your Honor, because it's a jurisdictional issue. It's a jurisdictional issue for the Court. This is a state case, Your Honor, and the best defense for this individual is in state court. So that issue was raised by us because it deprives the court of jurisdiction, and the trial court had already stated that it would not exercise supplemental jurisdiction over the state law claims because that's the way these claims should be against the individual. This case could proceed without us as individuals, Your Honor. If there are discrimination claims, that's something the Jefferson Parish School Board needs to address.  What relief are they specifically alleging that they're entitled to from these two individuals? Damage, Your Honor. And as pointed out by counsel for Nick, the damages that they're seeking are personal damages that would be outside the realm of their scope. Against your client. Against my client. And that's why if you wanted to bring them in there as a witness and as an individual to provide evidence regarding discrimination that may have occurred in the Jefferson Parish school system, that's fine. But when you bring an individual in, that individual has personal liability, and there's a state remedy provided to that individual, then that's where this case needs to be. The statute that counsel cites regarding the discipline of an autistic child is a state statute. That statute provides remedies, and this court has said that the state of Louisiana does provide remedies to students. So you're saying we could reverse on the Jefferson Parish but affirm on Nick and Raul, and then they would go to state court, and then you'd be having this kind of flopping back and forth between these two different courts? Does that make a lot of sense? It's two different issues. No, it does make sense, Your Honor. Well, because while there may be different, like, legal issues, I mean there wouldn't be a suit against the Jefferson Parish but for the actions of Nick and Raul, right? Correct. Okay. But, Your Honor, I guess the point being the dynamic changes when you're suing somebody on an individual basis. You don't need to bring them as individuals. There are damages that would be allowed against the Jefferson Parish School Board, which would satisfy or could satisfy any damages that would have occurred as a result of discrimination. They are not suing these two individuals as agents of the school board? They're not suing – no, they're suing in the individual capacity. Okay. And, Your Honor, one other thing too. These are individual claims as to the different teachers, and one of the issues – I mean they're not asking the school board to assume responsibility for the damages that they allege have been inflicted by these two individuals. Well, as Counselor Jefferson Parish School Board pointed out, if the allegations are proven true of intentional tort as alleged by the plaintiff, then that would be outside the courts and the scope of their employment, and there would be no recovery for that. And that's where the personal liability of these individuals come into play. And finally, I would just like to point out, Your Honor, while the issue wasn't addressed and reached by the trial court, an issue with respect to the proscription does exist with respect to Monroe. And the court can on its own take a look at that issue as well. This suit was initially filed timely but then dismissed completely and refiled without any reference to the prior pleading. And that refiling of the suit was over one year after the alleged incident. And as such, it should be considered prescribed under Louisiana law. Okay. Thank you. Thank you, Counselor. Okay, we'll hear our rebuttal. Thank you, Your Honor. What is the injunctive relief that you're seeking here? Yeah, I'll get right to that, Judge Jolly. So one of our federal claims is a 1983 claim for failure to train. So what happens is we have, I think it was February, Janine Rowell slaps my client, okay? And you would assume that Jefferson Parish would have trained its employee. Is it alleged slap, you know, has certain connotations that sound more serious than it appeared to be in this case? In other words, as I understand, she slapped the wrist. It's not like you slapped in the face or that sort of thing. I mean it's – Well, we allege that she slapped her on the hands, which is certainly not something that – they have agreed it's certainly not something that should happen. But putting aside – What was the child doing at the time that she slapped the child on the hand? With regard to Janine Rowell, it's not really clear. And again, this is without discovery. We don't know. But what we do know is that in our complaint we allege that my client exhibits certain behaviors because of – How do you know? You said you don't know what the child was doing, but you know the child was slapped on the hand. How do you know that? Because an ABA therapist reported it, Your Honor. So it's possible to know what was going on in that classroom without the child telling? Yes, but I have not spoken with this individual. I don't – so I think we're getting a little bit beyond the scope of the appeal. But to answer – I'm not asking you to do that. That's fine. I guess the only follow-up question I would have is since you don't know what the child is doing – Let me – I'll answer it. It doesn't matter what the child is doing. This is a special education classroom. These are kids with special needs. And when you take a job – Let me ask my question anyway. Okay. So he says that the child was pinching, and this is Ms. Nick. The child was pinching Ms. Nick's neck. Yes. So she says, no, don't do that. She slapped the child. All right, we'll call it a slap. She slaps the child on the hand. What should she have done if the child is pinching her? So, Your Honor, this is getting right to my question, to Judge Jolly's question. We allege a failure to train claim under 1983. When you take a job as a special education teacher or paraprofessional, you ought to be trained on what to do when a child – Well, you ought to be able to tell us now what she should have done. Absolutely, Your Honor. Well, tell us. Okay. So she should have removed herself from the situation, given the child space, and said, okay, we're not going to do that. And let – give the child time to calm down. Or you can – there's ways – All right. So, in addition, she slapped her on the wrist. I want to know, and I'm puzzling, what excites you so about this case? Why is this – Well, we've gone beyond – a little bit beyond the record here. So it's fair to say that Janine Rowell, after she left Jefferson Parish, she was then hired in St. Tammany Parish, where, surprise, surprise, she has now been fired for hitting kids with autism. So it does animate me because I represent these children, Your Honor. Wait a minute. We have gone way out of the record here. That's – we have gone out of – but I think the court was asking for extra record information. No, I wasn't. But the – what the relief we're seeking – This case has nothing to do with this case, but you're trying to reach the conduct of two individuals outside this case. No, we're trying – no, Your Honor. That's what you just said, and I understand it. Your motive for – as I understood you to say, and you can tell me if I'm wrong. Your motive for filing this case is in substantial part these two individuals work somewhere else where they have engaged in that conduct. No, Your Honor. This happened a month ago. This happened two years after, two years later. So this has nothing to do with it. However, I would like what the limited amount of time I have remaining. There was a statement that the disparate treatment claims are conclusory. But I'm just going to read from the Ciccolese case. Okay, and this is at page 767. It says the district court reasoned that appellants did not allege with adequate specificity that, quote, any similar situated non-Italian employee was treated differently, and therefore it failed to plausibly allege circumstantial evidence of discriminatory motive. The court reversed and said that is a summary judgment standard. What are you reading from? That is Ciccolese v. University of Medical Branch. Well, I understand, but what court is that? This court. This court? Yes. Can you give the site, please? Yes, 924 F. 3rd, 762. And if I may, I'm out of time, but if I may, I'd like to just one other case. Quickly. Okay, Johnson v. Johnson, which is 385 F. 3rd, 503. And that case says that it's unclear how a prisoner is supposed to possess identifying information regarding other inmates' treatment at the complaint stage. So the district court is clearly requiring us to allege things that under Johnson v. Johnson and Ciccolese v. University of Texas Medical Branch we are not required to allege. Thank you, Your Honor. I didn't realize it was pronounced Ciccolese. Okay, thank you very much. This case is under submission.